```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOHN HECTOR,                                                  :
                          Plaintiff,                          :
v.                                                            :      OPINION AND ORDER
                                                              :
KATHLEEN HECTOR, JEANINE HECTOR,                              :      22 CV 5990 (VB)
EDWARD GUTHRIE, RAYMOND JOHNSON,                              :
and DOES 1 through 5,                                         :
                          Defendants.                         :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff John Hector, an attorney proceeding pro se,[1] brings this action against defendants Kathleen Hector, Jeanine Hector, Edward Guthrie, Raymond Johnson, and "Does 1 through 5," arising from a dispute with his mother, Kathleen Hector, regarding two properties in Sullivan County they allegedly own together. Plaintiff brings state-law claims for breach of contract, breach of fiduciary duty, partnership accounting, fraudulent inducement, partition, intentional interference with contractual rights and economic advantage, conversion, trespass, and property damage.

Now pending is defendants' motion to dismiss the second amended complaint pursuant to Rule 12(b)(6). (Doc. #21).

For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

---

[1]      Ordinarily, the Court liberally construes submissions of a pro se litigant and interprets them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Here, however, because plaintiff is a practicing attorney who admits familiarity with litigation, he is not entitled to such "special solicitude." See Parent v. New York, 485 F. App'x 500, 502–03 (2d Cir. 2012) (summary order) (attorney with twenty years of experience litigating civil rights cases was not entitled to "special solicitude"); see also Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010) ( "[A] lawyer representing himself ordinarily receives no such solicitude at all.").

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the second amended complaint (Doc. #20 ("SAC")), and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff, who lives in California, claims he co-owns two properties with his mother, Kathleen Hector, who lives in New York. The first property is a single family residence located at 125 School Street in Narrowsburg, New York (the "School Street Property"). Plaintiff alleges that in 2013, Kathleen Hector formally conveyed an interest in this property by deed to plaintiff. The second property is five acres of unimproved land located on Delaware Drive, also in Narrowsburg (the "Delaware Drive Property"). The title to the Delaware Drive Property remains with Kathleen Hector.

According to plaintiff, in 2008, he and Kathleen Hector entered into a partnership agreement related to the management of the School Street Property, and they verbally agreed "plaintiff would eventually buy out" his mother's interest in the property "at a price that would be determined by appraisal, or other fair market valuation as agreed by the parties." (SAC ¶¶ 4, 25). Plaintiff alleges he made nearly all mortgage, insurance, and utility payments for the School Street Property by sending checks to Kathleen Hector. He also claims he contributed "hundreds of hours" of maintenance and labor for the School Street Property and took on these efforts because he expected to buy out Kathleen Hector's interest in the property. (Id. ¶¶ 5, 30). Ultimately, plaintiff allegedly wished to use the property as a residence for himself and his daughter.

Between 2013 and 2020, plaintiff alleges there were many discussions about plaintiff purportedly "buy[ing] out [Kathleen Hector]'s interest in the School Street property, and [both parties] mutually confirmed that fact." (SAC ¶ 25). Around 2019, Kathleen Hector allegedly informed plaintiff that she wanted the purchase price of the School Street Property to be $165,000. But in the following years, she purportedly continued to raise that price based on subsequent appraisals. For example, plaintiff alleges in 2020, Kathleen Hector requested $200,000—pursuant to a second appraisal—to buy out her interest, to which plaintiff agreed. According to plaintiff, Kathleen Hector refused to "provide him with all of her documents reflecting income and expenditures" for the School Street Property, whereas plaintiff had already provided her with his documentation. (Id. ¶ 26). Thereafter, in 2021, Kathleen Hector allegedly "arbitrarily demanded" $240,000 to buy out her interest, but plaintiff refused. (Id. ¶ 27).

Plaintiff further alleges Kathleen Hector listed the School Street Property for sale without his knowledge and without informing the real estate broker that plaintiff was a "deeded owner." (SAC ¶ 8). But she did not ultimately sell the property.

In May 2022, allegedly with and at the direction of Kathleen Hector, defendants Jeanine Hector, Edward Guthrie, and Raymond Johnson removed plaintiff's personal possessions from the School Street Property, loaded them onto a U-Haul truck, and "without permission and while trespassing" relocated them to a storage barn owned by plaintiff located elsewhere. (SAC ¶ 10). As a result, there was "extensive damage to plaintiff's personal property," including to his legal files, historical documents, military records, artifacts, personal photos, as well as "valuable" collectibles. (Id.). For example, plaintiff alleges a baseball card collection with an estimated value of $15,000 to $25,000 remains missing.

Plaintiff alleges he and Kathleen Hector jointly acquired the Delaware Drive Property in 2012, under the same terms as the School Street Property. (SAC ¶ 7). Although Kathleen Hector is purportedly the sole titled owner, plaintiff alleges they both "contributed to payments for taxes and maintenance" for the Delaware Drive Property, and he "contributed significant hours of labor" to maintain it. (Id.).

## DISCUSSION

I.   Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

---

[2]   Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

4

unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.   Breach of Contract Claim

Defendants argue plaintiff's breach of contract claim must be dismissed because plaintiff has not plausibly alleged the existence of an enforceable agreement that defendant Kathleen Hector purportedly breached.

The Court agrees.

A.   Legal Standard

To state a claim for breach of contract, a plaintiff must allege the existence of an enforceable contract. Berman v. Sugo LLC, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).[3] At the pleading stage, this requires a plaintiff to allege facts "relating to the formation of the contract, the date it took place, the contract's major terms, the parties to the contract, or [a defendant's] assent to its terms." Id.; see also Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C., 455 F. App'x 102, 104 (2d Cir. 2012) (summary order). "The existence of a contract may be established through the conduct of the parties recognizing the contract." Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 97 (2d Cir. 2007). "In determining whether the parties' conduct is consistent with the existence of a binding contract, it is necessary that the totality of all acts of the parties, their relationship and their objectives be considered." Id.

Under New York law, transactions related to real estate must be in writing, or are otherwise barred by the Statute of Frauds. See Ohr Somayach/Joseph Tanenbaum Educ. Ctr v.

---

[3]   In light of both parties' reliance on New York law in their submissions, the Court applies New York law to plaintiff's claims. See Clarex Ltd. v. Natixis Sec. Am. LLC, 2013 WL 2631043, at *2 (S.D.N.Y. June 11, 2013) (noting the parties' assumption that New York law controls is implied consent to choice of law).

5

Farleigh Int'l. Ltd., 483 F. Supp. 3d 195, 205 (S.D.N.Y. 2020); N.Y. Gen. Oblig. Law § 5-703(1).  "[T]he purpose of the Statute of Frauds is simply to prevent a party from being held responsible, by oral, and perhaps false, testimony, for a contract that the party claims never to have made."  William J. Jenack Est. Appraisers & Auctioneers, Inc. v. Rabizadeh, 22 N.Y.3d 470, 476 (2013).

Generally, to satisfy the Statute of Frauds, there must be a writing containing all material terms of the alleged contract.  DeRosis v. Kaufman, 219 A.D.2d 376, 379 (1st Dep't 1996) ("To be considered a sufficient memorandum within the ambit of the Statute of Frauds, a writing must designate the parties, identify and describe the subject matter and state all the essential or materials terms of the contract.").  An agreement that violates the Statute of Frauds may nonetheless be enforceable where there has been part performance "unequivocally referable" to the oral contract by the party seeking to enforce the agreement.  Barretti v. Detore, 95 A.D.3d 803, 807 (2d Dep't 2012).

    B.    Analysis

Defendants argue plaintiff fails plausibly to allege a breach of contract claim because he does not allege the existence of an enforceable contract and his claim is barred by the Statute of Frauds.

The Court agrees.

Plaintiff alleges Kathleen Hector breached the purported verbal agreement by refusing to sell her interest in the School Street Property at a mutually agreeable price.  On the other hand, plaintiff contends he fully performed under the contract by maintaining the property and making mortgage payments over the years.

First, the SAC does not identify any essential terms of the purported agreement,

including, for example, the purchase price, time and terms of payment, required financing, closing date, risk of loss during the sale period, or adjustments for taxes and utilities. Instead, plaintiff merely pleads he was to "eventually" buy out Kathleen Hector's interest. (SAC ¶ 4). This is insufficient to support a breach of contract claim. See, e.g., Jones v. James, 37 A.D.3d 543, 543 (2d Dep't 2007) ("[T]hat the defendant agreed to convey to the plaintiff, at some point in the future, half the interest in the subject real property, and because there was no deed or conveyance in writing regarding the proposed conveyance, the [lower court] properly dismissed the plaintiff's first cause of action for breach of contract as barred by the statute of frauds.").

Second, plaintiff is incorrect that his breach of contract claim is resuscitated by the part performance doctrine. Plaintiff contends he has fully performed under the oral contract and therefore, the part performance exception to the Statute of Frauds should apply. (Doc. #24 ("Pl. Opp.") ¶¶ 4, 5). However, "[u]nequivocally referable conduct" supporting part performance "is conduct which is inconsistent with any other explanation." Barretti v. Detore, 95 A.D.3d at 806. And plaintiff's alleged mortgage payments and property maintenance efforts can be attributed to a host of reasons beyond the contractual obligations he claims he was required to fulfill under the oral agreement. See e.g., Preston v. Nichols, 216 A.D.3d 1398 (4th Dep't 2023) ("Under the circumstances of this case, plaintiff's actions in paying property taxes and related expenses, including making renovations to a sunroom on the property, were not 'unequivocally referable' to an agreement to purchase the property to warrant invoking the doctrine of part performance."). Plaintiff alleges he is a co-owner of the property and stays at the residence when he visits the state, and thus may contribute hours of labor and maintenance, as well as make payments in his role as a co-owner and resident. Moreover, plaintiff even alleges his payments were made "in

furtherance of the partnership agreement" (SAC ¶ 5), rather than a purported sale contract related to the School Street Property.

Accordingly, plaintiff's breach of contract claim must be dismissed.

III.  Breach of Fiduciary Duty Claim

Defendants argue plaintiff fails to state a claim that Kathleen Hector owed a fiduciary duty to plaintiff regarding the properties at issue.

The Court agrees.

A.  Legal Standard

"The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." Varveris v. Zacharakos, 110 A.D.3d 1059, 1059 (2d Dep't 2013). "A fiduciary relationship exists between two persons when one of them is under a duty to act for the benefit of another upon matters within the scope of the relation." Id. New York courts have generally described a fiduciary relationship "as one in which a party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge." NEM Re Receivables, LLC v. Fortress Re, Inc., 173 F. Supp. 3d 1, 6 (S.D.N.Y. 2016). "[P]arties in a contractual relationship do not ordinarily bear a fiduciary relationship to one another unless they specifically so agree." Id.

B.  Analysis

The Court concludes plaintiff and Kathleen Hector's relationship, as alleged in the SAC, does not give rise to a fiduciary duty.

Contrary to plaintiff's assertions in his opposition brief,[4] the SAC does not allege Kathleen Hector owes him a fiduciary duty based on their "familial connection" as mother and son or purported co-tenancy (Pl. Opp. ¶ 9); instead he alleges she owes him "the highest fiduciary duty" based on her alleged role "[a]s plaintiff's partner" (SAC ¶ 20)—which, alone, is insufficient. See EBC I, Inc. v. Goldman Sachs & Co., 91 A.D.3d 211, 214 (1st Dep't 2011) (finding a conventional business relationship at arm's length does not give rise to fiduciary obligations); Womack v. Cap. Stack, LLC, 2019 WL 4142740, at *10 (S.D.N.Y. Aug. 30, 2019) ("Absent extraordinary circumstances, parties dealing at arm's length in a commercial transaction lack the requisite level of trust or confidence between them necessary to give rise to a fiduciary obligation.").

And plaintiff has failed to allege facts demonstrating Kathleen Hector maintained any particular superiority and influence over plaintiff that might give rise to a fiduciary relationship or any fiduciary duties related thereto. Rather, plaintiff alleges in a conclusory fashion that Kathleen Hector, as plaintiff's partner and mother, owed a fiduciary duty to him. The "[m]ere reposal of one's trust and confidence in a party, however, does not automatically create a fiduciary relationship; the trust or confidence must be accepted as well." Thermal Imaging, Inc. v. Sandgrain Sec., Inc., 158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001). Here, plaintiff does not allege Kathleen Hector accepted his purported trust and confidence in her.

Accordingly, plaintiff's breach of fiduciary duty claim must be dismissed.

---

[4] As noted above, although plaintiff is proceeding pro se, he is a practicing attorney and thus not entitled to the special solicitude typically afforded to pro se plaintiffs. As such, the Court may only consider allegations in the SAC.

IV.       <u>Partnership Accounting Claim</u>

Defendants next argue that because plaintiff fails to allege Kathleen Hector owed him a fiduciary duty, his partnership accounting claim fails.

The Court agrees.

"Under New York law, a plaintiff seeking an accounting, which is an equitable remedy, must allege both a fiduciary relationship between the plaintiff and defendant and a breach of that fiduciary duty by the defendant." <u>Soley v. Wasserman</u>, 823 F. Supp. 2d 221, 237 (S.D.N.Y. 2011).

Here, because plaintiff has not alleged a fiduciary relationship with Kathleen Hector (as set forth above), he fails to state a claim for accounting. See <u>Saunders v. AOL Time Warner, Inc.</u>, 18 A.D.3d 216, 217 (1st Dep't 2005) ("[I]n the absence of a confidential or fiduciary relationship, plaintiffs have no cause of action for an accounting.").

Accordingly, plaintiff's accounting claim must be dismissed.

V.       <u>Fraudulent Inducement Claim</u>

Defendants argue plaintiff's fraudulent inducement claim must be dismissed because plaintiff fails to plead what fraudulent statements were made, who made them, to whom they were made, and when they were made. Further, defendants argue plaintiff has not pleaded fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

The Court agrees.

A.       <u>Legal Standard</u>

To state a claim for fraudulent inducement under New York law, a plaintiff must allege "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the

plaintiff reasonably relied; and (5) which caused injury to the plaintiff." N.Y. Wheel Owner LLC v. Mammoet Holding B.V., 481 F. Supp. 3d 216, 234 (S.D.N.Y. 2020) (quoting Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001)).

In addition, Rule 9(b) provides "a party must state with particularity the circumstances constituting fraud." Thus, the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). Finally, "[t]o meet the requirements of Rule 9(b) a plaintiff must show the manner in which he was damaged by the implementation of a deceptive or manipulative practice or by a misrepresentation or omission." Moran v. Kidder Peabody & Co., 609 F. Supp. 661, 665 (S.D.N.Y. 1985), aff'd, 788 F.2d 3 (2d Cir. 1986).

B.    Analysis

Here, plaintiff fails to allege any fraudulent statement, much less the identity of any speaker or where and when such statements were made. At most, he alleges Kathleen Hector, through her alleged course of conduct and communications, represented she was capable of performing the supposed agreement to sell her interest in the School Street Property. However, her alleged underperformance against certain promised quotes does not raise an inference of fraud, notwithstanding plaintiff's alleged reliance on such quotes. Even drawing all reasonable inferences in plaintiff's favor, the SAC's conclusory allegations that, based on plaintiff and Kathleen Hector's familial relationship her purported representations as to her trustworthiness and intent to perform, without pointing to any "specific statements made by an identified speaker," fall well short of the heightened pleading requirements of Rule 9(b). See Jiaxing Hongyu Knitting Co. v. Allison Morgan LLC, 2013 WL 81320, at *3 (S.D.N.Y. Jan. 8, 2013).

Accordingly, plaintiff's fraudulent inducement claim must be dismissed.

VI.  Partition Claim

Defendants argue plaintiff's partition claim must be dismissed because he fails to adequately allege he owns the Delaware Drive Property as either a joint tenant or a tenant in common.

The Court agrees.

"Partition of commonly held real estate is a matter of right that can be exercised when an owner does not wish to continue to hold and use the property." McCaffery v. McCaffery, 2018 WL 1598617, at *6 (E.D.N.Y. Mar. 16, 2018), report and recommendation adopted, 2018 WL 1597392 (E.D.N.Y. Apr. 2, 2018).  New York permits a "person holding and in possession of real property as [a] joint tenant or tenant in common" to initiate an action for a partition, as well as for the sale of the property "if it appears that a partition cannot be made without great prejudice to the owners."  N.Y. Real Prop. Acts Law § 901(1).  "The right to partition is not absolute, however, and while a [joint tenant or] tenant in common has the right to maintain an action for partition pursuant to RPAPL 901, the remedy is always subject to the equities between the parties."  Tsoukas v. Tsoukas, 107 A.D.3d 879, 880 (2d Dep't 2013).

Here, plaintiff seeks the partition of the Delaware Drive Property only.  However, the SAC does not allege plaintiff and Kathleen Hector own the property as joint tenants or tenants in common.  Rather, in the SAC, although plaintiff alleges the Delaware Drive Property "was acquired jointly" with Kathleen Hector in 2012, he then acknowledges, "[t]itle to said property was taken solely in the name of defendant" Kathleen Hector."  (SAC ¶ 7).  Nevertheless, plaintiff attaches a declaration to his opposition brief in which he states, "[t]o the extent Kathleen Hector contends that plaintiff is not an owner, or co-tenant, of the Delaware Drive parcel, Kathleen has

12

acknowledged plaintiff's ownership in writings (e-mails), and could not state under oath that this is not true, or that the property was not purchased in partnership." (Doc. #24-1 ("Pl. Aff.") ¶ 7).

Although plaintiff is proceeding pro se, as discussed above, he is a practicing attorney and not entitled to the special solicitude typically afforded to pro se plaintiffs. Thus, the Court may only consider allegations in the SAC and concludes plaintiff fails plausibly to allege he was a joint tenant or co-tenant, as he alleges that only Kathleen Hector ever had title to the Delaware Drive Property.

Accordingly, plaintiff's partition claim must be dismissed.

VII.   Intentional Interference with Contractual Rights and Economic Advantage Claim

Plaintiff has failed to address the part of the motion seeking to dismiss his interference with contractual rights and economic advantage claim, and thus the Court considers that claim to be abandoned. Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."); see also Brandon v. City of N.Y., 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases).

Accordingly, plaintiff's intentional interference with contractual rights and economic advantage claim must be dismissed.

VIII.   Conversion Claim

Defendants argue plaintiff's conversion claim must be dismissed because plaintiff has not plausibly alleged they wrongfully took or detained plaintiff's property to the exclusion of plaintiff's rights.

The Court disagrees.

13

A. <u>Legal Standard</u>

Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." <u>Colavito v. N.Y. Organ Donor Network, Inc.</u>, 8 N.Y.3d 43, 49–50 (2006).

To state a claim for conversion, a plaintiff must allege: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." <u>Kirschner v. Bennett</u>, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009). If "the conduct the plaintiff seeks to recover for amounts to the destruction or taking of the property, then the action is properly deemed one for conversion." <u>Sporn v. MCA Records, Inc.</u>, 58 N.Y.2d 482, 488 (1983).

B. <u>Analysis</u>

At this early stage, plaintiff has plausibly alleged a conversion took place when defendants purportedly moved his personal possessions from the School Street Property to his storage barn located elsewhere.

First, according to plaintiff, the property subject to the alleged conversion is comprised of specific, identifiable things, including "legal files, historical documents including plaintiff's military records and artifacts, many years of personal photographs, a valuable baseball card collection, a valuable record collection, clothing, furniture and plaintiff's personal computer." (SAC ¶ 10).

Second, plaintiff alleges he had ownership over the property before its conversion, which defendants do not dispute.

Moreover, both parties agree the items were transported from the School Street Property to another property. Defendants, however, maintain there was nevertheless no exclusion of plaintiff's rights as the items were transported to a storage barn owned by the plaintiff, such that plaintiff remained in possession of his property the entire time—precluding his conversion claim. (Doc. #21-1 ("Defs. Mem. of Law") at 23).

Accepting plaintiff's allegations as true, the Court finds there is a basis for conversion when, as here, items have been damaged or gone missing. It is irrelevant whether or not the items were ultimately transported to another location owned by the plaintiff. By purportedly moving, stealing, and damaging plaintiff's personal belongings, defendants "exercised an unauthorized dominion over the thing[s] in question, to the alteration of its condition or to the exclusion of the plaintiff's rights."[5] Kirschner v. Bennett, 648 F. Supp. 2d at 540. Thus, plaintiff has adequately pleaded conversion.

Accordingly, plaintiff's conversion claim may proceed.

IX.   Trespass Claim

Defendants argue plaintiff fails plausibly to plead trespass.

The Court disagrees.

A claim for trespass to real property requires "an intentional entry onto the land of another without justification or permission." Marone v. Kally, 109 A.D.3d 880, 883 (2d Dep't

---

[5] Defendants further assert plaintiff "fails to allege an 'exercise of the right of ownership'" by any particular defendant because he merely states the items were "damaged" during their transport. (Doc. #27 ("Defs. Reply") at 9; Defs. Mem. of Law at 22). Plaintiff admits he does not know which of the specific defendants is to blame for his lost and missing items, but nevertheless, he is able to identify all four as being personally involved.

2013). "Trespass is the invasion of a person's right to exclusive possession of his land." Berenger v. 261 W. LLC, 93 A.D.3d 175, 181 (1st Dep't 2012). Indeed, "[t]he essence of trespass to real property is injury to the right of possession." Bloomingdales, Inc. v. N.Y. City Transit Auth., 13 N.Y.3d 61, 66 (2009). Proof of ownership is not sufficient to establish the possessory right required to bring a trespass claim; on the contrary, an action for trespass "may be maintained even against an owner by the one entitled to possession." Bower v. Weisman, 639 F. Supp. 532, 540 (S.D.N.Y. 1986).

Plaintiff has alleged the necessary elements to sustain a trespass claim. Specifically, plaintiff asserts that after defendants moved his personal belongings from the School Street Property, they intentionally entered his barn without his permission, which defendants do not dispute. Accordingly, plaintiff's trespass claim may proceed.[6]

X.     Leave to Replead

In the last sentence of his opposition brief, plaintiff includes a cursory request for leave to file a third amended complaint in the event the Court dismisses any of the claims set forth in the SAC.

Plaintiff is an attorney, and he has already amended his complaint twice. Moreover, plaintiff filed the SAC after defendants moved to dismiss the first amended complaint. Because their arguments were fully briefed in that motion (Doc. #15) and are substantially similar to those

---

[6] Defendants also argue plaintiff's property damage claim should be dismissed. Although pleaded as its own claim, plaintiff's alleged property damage derives from his conversion and trespass claims, and is dependent on whether these underlying claims proceed. (See SAC ¶ 47 ("In the course of trespassing on plaintiff's property, while re-locating plaintiff's personal property from School Street to plaintiff's barn, the defendants damaged a significant amount of plaintiff's personal property.")). Thus, because the Court has denied defendants' motion on plaintiff's conversion and trespass claims, the Court likewise declines to dismiss plaintiff's request for damages because of defendants' purported damage to plaintiff's property.

set forth in the instant motion, plaintiff was fully on notice of the deficiencies in his pleadings and nevertheless failed adequately to address them in the SAC.  Accordingly, repleading would be futile, and constitute undue delay.  See F5 Capital v. Pappas, 856 F.3d 61, 89-90 (2d Cir. 2017); Salinger v. Projectavision Inc., 972 F. Supp. 222, 236 (S.D.N.Y. 1997) ("Three bites at the apple is enough.").  Thus, the Court declines to grant plaintiff leave to file a third amended complaint.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

All of plaintiff's claims are dismissed, except for his conversion and trespass claims as well as his related property damage claim, which shall proceed.

By September 28, 2023, defendants shall file an answer to the SAC.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed terminate the motion.  (Doc. #21).

Dated: September 14, 2023
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge